Cite as 2026 Ark. App. 26

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-25-159

| | |
|---|---|
| MACHANDY MASON | Opinion Delivered January 14, 2026 |
| APPELLANT | |
| | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | [NO. 16JJV-23-336] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE KIMBERLY BOLING BIBB, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**MIKE MURPHY, Judge**

Counsel for Machandy Mason brings this no-merit appeal from the Craighead County Circuit Court's order terminating her parental rights to two of her minor children. Mason has three minor children: MC1 (DOB 04/04/13), MC2 (DOB 11/28/18), and MC3 (DOB 11/06/20); her rights to MC2 and MC3 were terminated. Following the dictates of Arkansas Supreme Court and Court of Appeals Rule 6-9(j) (2022) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), Mason's attorney has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court sent a copy of the brief and the motion to withdraw to Mason, informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3), which she has chosen to do. Having reviewed

the brief and the record, we agree that an appeal would be wholly without merit. Therefore, we affirm the order terminating Mason's parental rights and grant counsel's motion to withdraw from representation.

The Arkansas Department of Human Services (DHS) has been involved with the family since May 10, 2018. On July 17, 2023, DHS was contacted by the Craighead County Health Unit regarding MC1, who had missed a follow-up appointment for the treatment of tuberculosis. A DHS caseworker eventually made contact with the family after a month of multiple attempts and learned that they were staying in a home where a child had recently died from fentanyl exposure. Mason acknowledged having received a phone call from the Health Unit the previous month and that she did not take MC1 for follow-up care. She did not have an explanation for her failure to do so.

On August 15, 2023, DHS exercised an emergency hold on the children for medical neglect and exposure to illegal substances. The following day, DHS held a team decision-making meeting, and according to the caseworker, Mason failed to appear and refused to answer the phone after hanging up on the caseworker. This prompted DHS to continue the emergency hold and file a petition for custody and dependency-neglect.

The circuit court entered an emergency order finding that reasonable efforts had been made by DHS to prevent removal and that the children's placement in foster care was necessary. A probable-cause hearing on August 25, 2023, resulted in the circuit court's finding that an emergency existed that necessitated the removal of the children from Mason's

2

custody and that probable cause continued to warrant the children's placement in DHS's custody pending an adjudication hearing.

Over the course of three days during a two-month period, the court held a hearing on the petition to determine whether the children were dependent-neglected. On November 30, 2023, the court entered an order adjudicating the children dependent-neglected based on parental unfitness due to medical neglect. The court ordered Mason to complete standard services and to obtain and maintain stability.

On March 5, 2024, during the first review period, the court held a hearing and entered an order finding that Mason had partially complied with the case plan. The court noted that MC1 had been placed out of state (with her father's relatives) but that the goal remained reunification with a fit parent.

On June 27, 2024, during the second review period, the court held a hearing and entered an order finding that Mason had not complied with the orders of the court. The court noted specifically that Mason's drug screens were positive for illegal substances including fentanyl, that she often refused drug screens, and she failed to attend her outpatient treatment program at Harbor Behavioral Health. Although the court continued a goal of reunification, it set the case for a dual permanency-planning/termination hearing for August 15, 2024.

In response, on July 12, 2024, DHS filed a petition for termination of Mason's parental rights. DHS alleged that Mason continued to use illegal substances and failed to engage in services that could have assisted her in reunification. Primarily on the basis of these

factors, DHS alleged that Mason remained unfit and that aggravated circumstances existed because there was little likelihood that services would result in reunification. It also alleged that termination was in the children's best interest because they could find permanency through adoption, and they would be subject to potential harm if returned to Mason's custody.

The following month, the court held the permanency-planning hearing and implemented a goal of guardianship for MC1 and adoption or guardianship for MC2 and MC3. The court found Mason noncompliant with the case plan and court's orders. The court granted DHS's motion to move the termination hearing to December 3, 2024.

On December 3, the court held a hearing on the termination petition. The petition pertained only to MC2 and MC3. Mason and the DHS county supervisor were the only witnesses. At the time of trial, Mason was in jail, having been arrested on a failure-to-appear warrant. She admitted she was not able to take the children at that time. Mason had not been able to visit with the children in person in sixteen months because she kept testing positive for drugs. Mason testified that DHS had offered her a variety of services, including drug rehabilitation, but she did not participate in the services because she "felt like [she] could stop" the drug usage on her own.

The supervisor explained that the children had been removed from Mason's care due to medical neglect, but since then, Mason's drug use had become an issue. Specifically, she testified that Mason had not made substantial progress in the case considering her continued

drug use; her inability throughout the case to address DHS's concerns; her lack of income and means to provide for the children; and her failure to address her mental-health issues.

At the close of testimony, the court orally ruled that it was terminating Mason's parental rights. In addition to finding that termination of parental rights was in the best interest of MC2 and MC3, the circuit court based its order of termination on two grounds: subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (Supp. 2023), and aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*. The court memorialized its findings in a formal, written order, and Mason filed a timely notice of appeal. Her attorney has now filed a no-merit brief and motion to be relieved as counsel.

Upon review of the record, the only adverse ruling was the circuit court's termination decision. After reviewing the record, we conclude that counsel has adequately explained why this adverse ruling does not constitute meritorious grounds for reversal.

This court reviews termination-of-parental-rights cases de novo. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 7, 655 S.W.3d 534, 540. Termination requires a finding of at least one statutory ground and a finding that termination is in a child's best interest. *Id.* Arkansas Code Annotated section 9-27-341(b)(3) requires a circuit court's order terminating parental rights to be based on clear and convincing evidence. *Lloyd*, 2022 Ark. App. 461, at 8, 655 S.W.3d at 540. When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Barnett v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 481. A finding is clearly erroneous when, although there is evidence to support it, the

reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* This court gives a high level of deference to the circuit court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Id.*

Only one ground is necessary to terminate parental rights. *Albright v. Ark. Dep't of Hum. Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). One of the grounds the court relied on is aggravated circumstances, which provides that a court of competent jurisdiction may terminate parental rights when the parent is found to have subjected any juvenile to aggravated circumstances, and there is little likelihood that continued services would result in successful reunification. Ark. Code Ann. § 9-27 341(b)(3)(B)(ix)*(a)(3)(A)*. This court has noted that the aggravated circumstance of little likelihood that continued services would result in successful reunification is proved when "a parent is not following through with offers of assistance, is not meeting basic goals of the case plan and there is a lack of significant progress on the parent's part." *Aday v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 677, at 4.

Here, we agree with Mason's counsel that this ground was clearly proved at the termination hearing. The court found that, in light of Mason's lack of progress in the case, the continuation of services would not result in any likelihood of reunification. Mason had not complied with the case plan, and she was not willing to seek drug-abuse treatment because she did not think she had a drug problem. The court did not find Mason's belief credible. *See Yancy v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 35 (affirming termination in

a no-merit appeal where the mother failed to consistently comply with the circuit court's orders, continued to use drugs, and had not yet completed drug treatment).

Regarding best interest, there was uncontroverted evidence that MC2 and MC3 are likely to achieve permanency through adoption. DHS's county supervisor testified that the potential for adoption as a permanency plan is "very good" and that there are no barriers to adoption. The likelihood that the children would achieve permanency through adoption was not challenged. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Miller v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 239, at 8, 492 S.W.3d 113, 118.

Likewise, in regard to potential harm, the circuit court had sufficient evidence to find that MC2 and MC3 would be subjected to potential harm if returned to Mason's custody. Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

The same evidence supporting the statutory ground, specifically Mason's continued drug use and failure to provide a stable home, supports the potential-harm finding. *See Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119 (continued drug use demonstrates potential harm sufficient to support the circuit court's best-interest finding); *Friend v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670 (failure to obtain stable income or housing is relevant to the best-interest analysis).

Mason has filed her own points, arguing that the court's decision should be reversed. She appears to highlight the progress she has made since the termination order was entered. However, we cannot consider her posttermination achievements on appeal. *See Watts v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 334, at 9, 669 S.W.3d 915, 920. Additionally, her argument is essentially a request to reweigh the evidence, which cannot be used to reverse the circuit court's decision. *See id.*

Counsel has complied with the dictates of *Linker-Flores* and the rules of this court. Accordingly, we affirm the termination order and grant counsel's motion to withdraw from representation.

Affirmed; motion to withdraw granted.

WOOD and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Marc D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.